1  BRIAN J. STRETCH (CSBN 163973)
   Acting United States Attorney
2  ALEX G. TSE (CSBN 152348)
   Chief, Civil Division
3  MICHAEL T. PYLE (CSBN 172954)
   Assistant United States Attorney
4  150 Almaden Blvd Ste 900
   San Jose, CA 95113
5  Telephone:    (408) 535-5087
   Facsimile:    (408) 535-5081
6  Email: michael.t.pyle@usdoj.gov

7  Attorneys for Federal Defendant
   Federal Aviation Administration

8

9               **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                   **SAN JOSE DIVISION**

12 | KIRK J. KRAUSS and ANNA P. KRAUSS, | ) | Case No. |
   | --- | --- | --- |
13 | Plaintiffs, | ) | |
14 | v. | ) | NOTICE OF REMOVAL OF CIVIL ACTION |
15 | FEDERAL AVIATION ADMINISTRATION, SAN FRANCISCO INTERNATIONAL | ) | |
16 | AIRPORT, MINETA SAN JOSE INTERNATIONAL AIRPORT, OAKLAND | ) | |
17 | INTERNATIONAL AIRPORT, and DOES 1 through 50, Inclusive, | ) | |
18 | Defendants. | ) | |
19 | | ) | |

20

21        PLEASE TAKE NOTICE that on this day case no. CV-182390 pending before the Santa Cruz

22 County Superior Court, Civil Division is being removed to the United States District Court for the

23 Northern District of California pursuant to 28 U.S.C. §§ 1441, 1442 and 2679 on behalf of federal

24 defendant Federal Aviation Administration ("FAA").  Upon direction by the Attorney General of the

25 United States and pursuant to 28 U.S.C. § 1446, the undersigned attorneys hereby present the following

26
27 facts to the Judges of the United States District Court for the Northern District of California.

28        1. On or about September 4, 2015, plaintiffs Kirk and Anna Krauss, filed a complaint in Santa

NOTICE OF REMOVAL
C

Cruz County Superior Court, Civil Division. The complaint was filed against defendant FAA, San Francisco International Airport, Mineta San Jose Airport, and Oakland International Airport. Plaintiff alleges that in May of 2004, they purchased a home in Los Gatos herein called the "Krauss Property." In or around March of 2015, plaintiffs allege that defendants made changes to inbound and outbound flights that began to pass directly above or over the Krauss property; thus, causing significant aircraft noise and an increased risk of a crash. *See* Complaint (a copy of which is attached as Exhibit 1 to this Notice).

2. On October 28, 2015, the United States Attorney's Office in San Jose was served this pending lawsuit. A case management conference is currently set for January 4, 2016 at 8:29 A.M. in Department 5, Santa Cruz County Superior Court of CA, 701 Ocean Street, Santa Cruz, California 95060 and should be vacated upon filing of this notice.

3. Upon removal the United States is automatically substituted for federal defendant FAA and this action will proceed as an action against the United States of America pursuant to 28 U.S.C. §§ 1442 and 2679 since Plaintiffs are attempting to bring tort claims (nuisance and negligence) against the federal government and such claims can only proceed against the United States and not any federal agency. *See also* 28 U.S.C. 1346(b)(1) (federal courts have exclusive jurisdiction over such claims).

4. This action is one arising under the Constitution and Laws of the United States, and it is therefore an action over which the District Courts of the United States have original jurisdiction. A civil action in state court seeking damages from federal officials for acts taken under color of federal office may be removed to federal court provided that the defendant has a colorable federal defense or can otherwise articulate a connection between the performance of his duties and the acts or omissions alleged. It is removable to this court pursuant to 28 U.S.C. § 1441(a), (b).

5. A federal defendant removing under Section 1442 must demonstrate three things - that it is a "person" within the meaning of the statute, that there is a "causal nexus" between its actions and

**NOTICE OF REMOVAL**
C

plaintiff's claim, and that it can assert a "colorable federal defense." *Durham v. Lockheed*, 445 F.3d 1247, 1251 (9th Cir. 2006). Here, the federal defendant has met the three-part test for removal set forth in *Durham*. Moreover, with respect to the third requirement, "colorable" is interpreted broadly because "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999). Furthermore, the federal defendant will be moving to dismiss the claims against the federal government on the basis of the federal government's sovereign immunity.

6. A copy of this Notice is being filed with the Clerk of the Santa Cruz County Superior Court. This filing will automatically effect the removal action described above in its entirety to this Court for all future proceedings pursuant to 28 U.S.C. § 1446(d).


Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney


Dated: November 24, 2015                 _____/s/_____
MICHAEL T. PYLE
Assistant United States Attorney
Attorneys for Federal Defendant
Federal Aviation Administration

**NOTICE OF REMOVAL**
C

# EXHIBIT 1

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)



F I L E D

SEP 04 2015

ALEX CALVO, CLERK
BY SANDRA GONZALEZ
DEPUTY, SANTA CRUZ COUNTY

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

FEDERAL AVIATION ADMINISTRATION and
SAN FRANCISCO INTERNATIONAL AIRPORT

**YOU ARE BEING SUED BY PLAINTIFF:**    *see additional*
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**    *parties*
    *attachment*

KIRK J. KRAUSS and ANNA P. KRAUSS

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es): | **CASE NUMBER:**<br>(Número del Caso:)<br>CV 18239 0 |

Superior Court of California, County of Santa Cruz
701 Ocean Street, Santa Cruz, CA 95060

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

KIRK J. KRAUSS and ANNA P. KRAUSS, 1000 Wilderfield Road, Los Gatos, CA 95033    (408-354-4644)

DATE: September 4, 2015         ALEX CALVO
(Fecha)                         Clerk, by   **SANDRA GONZALEZ**           , Deputy
                                (Secretario)                            (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify):  FEDERAL AVIATION ADMINISTRATION

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other (specify): *Public Entity*
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| KRAUSS v. FAA | |

### INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

MINETA SAN JOSÉ INTERNATIONAL AIRPORT,
OAKLAND INTERNATIONAL AIRPORT, and
Does 1-50, inclusive

Page __1__ of __1__

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>KIRK J. KRAUSS and ANNA P. KRAUSS<br>1000 Wilderfield Road<br>Los Gatos, CA 95033<br>TELEPHONE NO.: 408-354-4644    FAX NO.:<br>ATTORNEY FOR *(Name):* | | **FOR COURT USE ONLY**<br><br>F I L E D<br><br>SEP 04 2015<br><br>ALEX CALVO, CLERK<br>BY SANDRA GONZALEZ<br>DEPUTY, SANTA CRUZ COUNTY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CRUZ
STREET ADDRESS: 701 Ocean Street
MAILING ADDRESS: 701 Ocean Street
CITY AND ZIP CODE: Santa Cruz, CA 95060
BRANCH NAME:

**CASE NAME:**
KRAUSS v. FAA

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CV 18239 0 |
|---|---|---|
| ☑ **Unlimited** (Amount demanded exceeds $25,000) ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ **Counter** ☐ **Joinder**<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☑ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 4, 2015

KIRK J. KRAUSS and ANNA P. KRAUSS
(TYPE OR PRINT NAME)                    ▶ *Kirk J. Krauss*  *Anna P. Krauss*
                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or
  toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil
  harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer
    or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally
  complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex
  case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-
    domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
  above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-
    harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified
  above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**
Santa Cruz Branch
701 Ocean Street, Room 110
Santa Cruz, CA 95060

For Court Use Only

F I L E D

SEP 0 4 2015

ALEX CALVO, CLERK
BY SANDRA GONZALEZ
DEPUTY, SANTA CRUZ COUNTY

PLAINTIFF:   KIRK J. KRAUSS

DEFENDANT:   FEDERAL AVIATION ADMINISTRATION

**CASE MANAGEMENT INFORMATION AND SETTING**

CASE NO:
CISCV182390

This case is in Santa Cruz County's Case Management Program.  It is the duty of each party to be familiar with the California Rules of Court and the date, time and place of the first case management conference.

This notice must be served with the summons on all defendants and cross-defendants.  Notice of any other pending case management conference must be served on subsequently named defendants and cross-defendants.

Attention Defendant: You have 30 days after the summons is served on you to file a written response to the complaint with the court. The date below does not extend the time to file a response.  See the summons for instructions for responding to the summons and complaint.  A written response may not be necessary in all cases.  To make this determination it is important to seek legal advice and information.  See the referrals at the bottom of this form.

---

**The first Case Management Conference hearing date is:**

**Date:  01/04/16**              **Time:  8:29**              **Department No.:   5**

Address of the Court:      701 Ocean Street, Santa Cruz, California

---

*Telephonic court appearances are provided through CourtCall to the court.  To make arrangements to appear at the Case Management Conference by telephone, please call the program administrator for CourtCall at (888) 882-6878 at least five (5) court days prior to the hearing.  DO NOT CALL THE COURT.*

If you are in need of legal advice or legal information on how to proceed in your case you may call or visit the following resources:
1. Santa Cruz County Bar Association Lawyer Referral Service: Phone 831-425-4755 (Fee based service).
2. Santa Cruz County Law Library: 701 Ocean Street, Room 70 Basement, Santa Cruz, CA 95060 Phone 831-454-2205, www.lawlibrary.org, for hours and other resources.
3. Santa Cruz Superior Court Self Help Center: 1 Second Street, Room 301, Watsonville, CA 95076 Phone 831-786-7200, option 4, www.santacruzcourt.org, for hours and workshop options.

CMC [Rev. 6/14]

Kirk J. Krauss and Anna P. Krauss
1000 Wilderfield Road
Los Gatos, CA 95033
408-354-4644
kirk_krauss@yahoo.com



FILED

SEP 04 2015

ALEX CALVO, CLERK
BY SANDRA GONZALEZ
DEPUTY, SANTA CRUZ COUNTY

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SANTA CRUZ

KIRK J. KRAUSS and ANNA P. KRAUSS,

Plaintiffs,

vs.

FEDERAL AVIATION ADMINISTRATION,
SAN FRANCISCO INTERNATIONAL
AIRPORT, MINETA SAN JOSÉ
INTERNATIONAL AIRPORT, OAKLAND
INTERNATIONAL AIRPORT, and Does 1-
50, inclusive,

Defendants.

CASE NO.  CV 182390

**COMPLAINT FOR DECLARATORY
JUDGMENT REGARDING AIRCRAFT
FLIGHT PATHS**

Plaintiffs KIRK J. KRAUSS and ANNA P. KRAUSS allege as follows:

## INTRODUCTORY GENERAL ALLEGATIONS

1.      Plaintiffs KIRK J. KRAUSS and ANNA P. KRAUSS (herein "Krauss") are individuals

and residents of Santa Cruz County, California.

2.      On information and belief, Defendant FEDERAL AVIATION ADMINISTRATION

(herein "FAA") is an agency of the United States federal government, Defendants SAN

FRANCISCO INTERNATIONAL AIRPORT (herein "SFO"), MINETA SAN JOSÉ

INTERNATIONAL AIRPORT (herein "SJC"), and OAKLAND INTERNATIONAL

AIRPORT (herein "OAK") are municipal airports managed at least in part by the cities of

San Francisco, California, San José, California, and Oakland, California, respectively, and located in San Mateo County California, Santa Clara County, California, and Alameda County, California, respectively.

3.      Plaintiffs are ignorant of the true names and capacities of Defendants named above as Does 1-50 inclusive and therefore sue those Defendants by such fictitious names. Plaintiffs allege that each of the Defendants designated above as a fictitiously named Defendant is in some manner responsible for the events and occurrences alleged below. These events and occurrences have caused damage to Plaintiffs as alleged below. When Plaintiffs ascertain the true names and capacities of Does 1 through 50, Plaintiffs will amend the last filed Complaint accordingly.

4.      In May of 2004, Plaintiffs purchased a parcel that includes a single-family residence and is commonly known as 1000 Wilderfield Road, Los Gatos, California. It is also known as Santa Cruz County Assessor's Parcel Number 091-131-17. It will be called the "Krauss Property" in this document. Plaintiffs presently reside at the Krauss Property.

## GENERAL ALLEGATIONS REGARDING NEW FLIGHT PATHS

5.      On information and belief, in or around March of 2015, the Defendants collectively deployed changes to airport standard instrument departure procedures (SIDs) and standard instrument arrival procedures (STARs) known as the Northern California Optimization of Airspace Procedures in the Metroplex Project (NorCal OAPM), applicable to inbound and outbound flights. With these changes, inbound and outbound flights began to pass directly over or nearly over the Krauss Property and other properties in the vicinity of the Krauss Property.

6.      Prior to March of 2015, the Krauss Property was only on rare occasions subject to any of flights of aircraft over or near the property, or audible aircraft noise, or the hazards associated with aircraft maneuvering over local mountain terrain. For many entire afternoons, the nearest flights passing by were so distant as to be inaudible from Plaintiffs' home. Plaintiffs' home is located at the end of a private road, such that prior to March of

1   2015, any road noise or other human-generated noise was typically inaudible or negligible

2   in the vicinity of Plaintiffs' home.  Prior to March of 2015, aircraft traveling inbound

3   toward or outbound from the runways of Defendant airports almost always followed flight

4   paths that, on information and belief, had been in place for several decades.  Exhibit A

5   depicts the BIG SUR TWO STAR for Defendant SFO, an example of such a flight path as

6   was traditionally followed by flights under air traffic control guidance from Defendant SFO

7   prior to March of 2015.

8   7.      As of the deployment of the NorCal OAPM in or around March of 2015, inbound and

9   outbound flights passing directly over or nearly over the Krauss Property and other

10  properties in the vicinity have become frequent, often occurring at intervals of

11  approximately one overhead flight every three minutes on a typical afternoon.  The noise

12  produced by these aircraft at the Krauss property, just outside of Plaintiffs' home, varies

13  from moderate levels to such volumes that Plaintiffs must raise their voices to speak with

14  one another when standing more than a few feet apart from one another.  Aircraft noise

15  also has become disturbingly loud inside Plaintiffs' home on many occasions.  The aircraft

16  often change velocity or otherwise maneuver over the vicinity of Plaintiffs' home.  On

17  information and belief, this maneuvering not only adds to the noise but also increases the

18  risk of a crash that could result in a wildfire that would have great potential to destroy

19  Plaintiffs' home and other homes in the surrounding vicinity of the Krauss Property.  On

20  information and belief, generally, the presence of large numbers of aircraft flying over the

21  vicinity increases the risk of a wildfire at the Krauss Property.

22  8.      The surrounding vicinity of the Krauss Property includes other properties comprising

23  both improved and unimproved land in the unincorporated portion of Santa Cruz County

24  that includes a western portion of unincorporated Los Gatos and an eastern portion of

25  unincorporated Boulder Creek.  The NorCal OAPM has been arranged in conjunction with

26  numerous inbound and outbound flights that pass directly over or nearly over numerous

27  properties in this vicinity.  Roughly, this vicinity can be thought of as the mountainous

28  region of Santa Cruz County between Soquel San Jose Road and Highway 9.  On

information and belief, at least a portion of this vicinity is more affected by noise associated with the NorCal OAPM than any other vicinity in the entire Bay Area. On information and belief, property owners throughout this vicinity have been protesting the effects of the new flight paths over the vicinity. On information and belief, as of July 24, 2015, representatives of the FAA have determined that the new flight paths associated with the NorCal OAPM will remain in place, despite protests, and have indicated to local community leaders that the number of inbound and outbound flights over the vicinity will remain at levels that are current as of the filing of this Complaint. Minutes from a meeting in which representatives of the FAA indicated this determination to local community leaders are attached as Exhibit B. On information and belief, the community members in the vicinity have no local official whose jurisdiction is specific to the vicinity (and encompasses no other vicinities) and who is able to arrange litigation or other intervention with respect to the new flight paths on behalf of community members in the vicinity.

9.      On information and belief, the NorCal OAPM has been deployed in order to modernize aircraft navigation. An announcement made with the involvement of one or more of Defendants with respect to the intent of the NorCal OAPM is attached as Exhibit C. On information and belief, prior to implementing the NorCal OAPM, Defendant FAA and the Defendant airports made no announcement indicating that the modernizing of aircraft navigation would lead to inbound and outbound flights passing directly over or nearly over the Krauss Property and other properties in the vicinity of the Krauss Property. While the NorCal OAPM may have resulted in benefits with respect to the means by which aircraft may be navigated during flight, nevertheless, on information and belief, there is no reason for the modernization to have affected aircraft flight paths so as either to increase levels of noise at the Krauss Property or its vicinity, or to increase the risk of wildfires that may affect the Krauss Property, or to arrange inbound and outbound flights passing over the Krauss Property or its vicinity. On information and belief, no one, including any of Defendants, has benefited in any way from arranging inbound and outbound flights to pass over the Krauss Property or its vicinity.

## FIRST CAUSE OF ACTION

## PRIVATE NUISANCE

10.     Paragraphs 1 through 9 are incorporated herein.

11.     Defendants have collectively interfered with Plaintiffs' use and enjoyment of the Krauss Property.  Plaintiffs own and live at the Krauss Property, and have done so all the while as Defendants planned and implemented the NorCal OAPM and deployed changes to inbound and outbound flight paths such that many aircraft descend and ascend over or near the Krauss Property.  By deploying these flight path changes, Defendants have created conditions of greatly increased aircraft noise at the Krauss Property.  Also, by deploying these flight path changes, Defendants have created conditions that have increased the risk of potentially deadly and destructive wildfires that may affect the Krauss Property.  Given the previously quiet and relatively safe conditions of the Krauss Property prior to the flight path changes, the conditions created by Defendants are offensive and disquieting. Plaintiffs have not consented, and do not consent, to Defendants' use of the airspace in the vicinity of Plaintiffs' home as a regularly used path for either inbound or outbound flights. Any ordinary person who is aware of the remote mountain setting of the Krauss Property would be reasonably annoyed and disturbed by its regular use as an inbound or outbound flight path of choice for Defendant airports.  Defendants collectively have harmed Plaintiffs by choosing to route substantial numbers of inbound and outbound flights above and in the vicinity of the Krauss Property.  Because neither Defendants nor the public have benefited in any significant way from the flight path changes that thus affect the Krauss Property, the harm to Plaintiffs outweighs any advantage gained from these flight path changes.  Plaintiffs have been damaged in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

## PUBLIC NUISANCE

12.     Paragraphs 1 through 11 are incorporated herein.

13.     Defendants deployed the NorCal OAPM in conjunction with flight path changes that have created conditions of offensive noise, increased wildfire risk, and general disquiet that harm both Plaintiffs and the owners and inhabitants of other properties in the surrounding vicinity.  Though neither Defendants nor the public have benefited in any significant way from the flight path changes, any reasonable person who is familiar with the remote mountain setting of both Plaintiffs' property and the surrounding vicinity would be reasonably annoyed or disturbed by the conditions created by Defendants.  The seriousness of the harm outweighs any social utility of the flight path changes.  Plaintiffs did not consent to the flight path changes, which have caused Plaintiffs to suffer harm that was different from the type of harm suffered by the general public which does not own or inhabit remote mountain settings.  The remote mountain setting of Plaintiffs' property is relatively free of human-generated noise, with respect to other settings, and it is prone to wildfires that may be caused by an aircraft malfunction or pilot error.  Defendants' conduct in deploying the flight path changes was a substantial factor in causing Plaintiffs' harm. Plaintiffs have been damaged in an amount according to proof at trial.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

14.     Paragraphs 1 through 13 are incorporated herein.

15.     Plaintiffs were harmed by Defendants' negligence in that Defendants deployed the NorCal OAPM, in conjunction with flight path changes that cause offensive aircraft noise and increase wildfire risk, without adequately considering the effects of the flight path changes on Plaintiffs' property and other properties in the surrounding vicinity. Defendants negligently deployed the flight paths without applying adequate standards for environmental impact.  Plaintiffs have been harmed, and Defendants' negligence was a substantial factor in causing that harm.  Plaintiffs have been damaged in an amount according to proof at trial.

# FOURTH CAUSE OF ACTION

## REQUEST FOR DECLARATORY RELIEF

16.     Paragraphs 1 through 15 are incorporated herein.

17.     A conflict exists between Defendants and Plaintiffs regarding the necessity, in ordinary circumstances such as routine commercial flights, for aircraft to pass directly over or nearly over the Krauss Property or other properties in the surrounding vicinity of the Krauss Property.  Plaintiffs claim that no reason exists for flights to pass, according to a default flight path selection, directly over or nearly over the Krauss Property and other properties in the vicinity.  Even if some reason may exist for those flights to pass over or nearly over Plaintiffs' property, the benefit of those flights doing so is outweighed by the hardship thus imposed on Plaintiffs, in light of the aircraft noise and hazards thus imposed on Plaintiffs in the formerly quiet setting of the Krauss Property.  Plaintiffs claim that inbound and outbound aircraft changing velocity and otherwise maneuvering in the vicinity of the Krauss Property impose needless noise and hazards upon Plaintiffs.  Defendants refuse to restore the default passage of aircraft to vicinities over which the aircraft have traditionally passed and instead claim that their newly-imposed flight paths, over the Krauss Property and its surrounding vicinity, will remain in effect.  As of the filing of this Complaint, Defendant airports arrange, as a matter of default air traffic control guidance, for flights to pass directly over or nearly over the Krauss Property and other properties in the surrounding vicinity as alleged in paragraphs 5 through 9.

18.     Thus an actual controversy has arisen and currently exists, as of the filing of this Complaint, between Defendants and Plaintiffs regarding their respective rights and duties.  Plaintiffs contend that no need exists for either inbound or outbound flights to pass directly over or nearly over the Krauss Property and other properties in the surrounding vicinity.  Defendants contend otherwise and insist that inbound and outbound flights over the vicinity will continue at roughly their current rates.  Plaintiffs seek a judicial declaration validating Plaintiffs' right to the same peaceful, quiet, and non-hazardous conditions pursuant to which Plaintiffs purchased the Krauss Property in 2004.  A judicial declaration

is necessary and appropriate at this time so that Plaintiffs may ascertain Defendants' rights and duties regarding the peace, quiet, and safety of Plaintiffs' property. If the flight paths are not restored to their former locations or otherwise corrected so as to not impact Plaintiffs' property, then Plaintiffs are entitled to recovery of the property value lost because of the dramatic increase in aircraft noise and hazards imposed at the insistence of Defendant FAA and with the complicity of Defendant airports, on grounds that include but are not limited to one or more of the three causes of action alleged above. Plaintiffs will thus have been damaged in an amount according to proof at trial.

## RELIEF SOUGHT

Wherefore Plaintiffs pray judgment, pursuant to the doctrine of election of remedies, for one of the following remedies:

First elective remedy: <u>Mandatory injunction compelling selection, by default, of traditional flight paths</u>

    A. For the Defendant FAA to cooperate with the Defendant airports so as to arrange for flights to follow traditional paths, other than in extraordinary circumstances;

    B. For a declaratory judgment regarding the respective rights and duties of Plaintiffs and Defendants;

    C. For issuance of a mandatory injunction ordering Defendant FAA to cooperate with Defendant airports so as to select, as a default path for each inbound or outbound flight, a path traditionally followed by flights bound inward toward or outward from the runways of Defendant airports prior to March of 2015, or so as to arrange any other default flight path that may be deemed just and proper;

    D. For Defendant airports to be thus compelled, by the mandatory injunction of the above line item C, to provide air traffic control guidance such that all inbound and outbound aircraft will follow the default path thus defined, other than in extraordinary circumstances;

E.  For Defendant airports to publish, in a forum viewable by any member of the public, a reason for any specific flight to follow an inbound or outbound path that does not comply with the default;

F.  For the Court to provide a statement in any format that may be deemed proper, to be provided to any federal, state or local agency, regarding the Court's findings regarding the lawfulness, properness, and judicial oversight of the default flight paths defined according to the above line item C;

G.  For damages relating to the diminution of value of Plaintiffs' property for the entire time during which Plaintiffs' home has been subject to the noise and hazards imposed by needless inbound and outbound flights over the property or its surrounding vicinity;

H.  For reasonable costs of suit and associated fees;

I.  For interest on the damages in a sum according to proof;

J.  For such other and further relief as may be deemed just and proper.

Second elective remedy: <u>Mandatory injunction compelling avoidance, by default, of flight paths over or near Plaintiffs' property</u>

A.  For the Defendant FAA to cooperate with the Defendant airports so as to arrange for flights to follow paths other than over or near Plaintiffs' property or the surrounding vicinity, other than in extraordinary circumstances;

B.  For a declaratory judgment regarding the respective rights and duties of Plaintiffs and Defendants;

C.  For issuance of a mandatory injunction ordering Defendant FAA to cooperate with Defendant airports so as to select, for each flight inbound or outbound flight, any path other than a path other than over or near Plaintiffs' property or the surrounding vicinity, other than in extraordinary circumstances;

D.  For Defendant airports to be thus compelled, by the mandatory injunction of the above line item C, to provide air traffic control guidance such that all inbound and outbound

aircraft will follow paths that are not over or near the vicinity of Plaintiffs' property, other than in extraordinary circumstances;

E. For Defendant airports to publish, in a forum viewable by any member of the public, a reason for any specific flight to follow an inbound or outbound path over or near the vicinity of Plaintiffs' property;

F. For the Court to provide a statement in any format that may be deemed proper, to be provided to any federal, state or local agency, regarding the Court's findings regarding the lawfulness, properness, and judicial oversight of the flight paths defined according to the above line item C;

G. For damages relating to the diminution of value of Plaintiffs' property for the entire time during which Plaintiffs' home has been subject to the noise and hazards imposed by needless inbound and outbound flights over the property or its surrounding vicinity;

H. For reasonable costs of suit and associated fees;

I. For interest on the damages in a sum according to proof;

J. For such other and further relief as may be deemed just and proper.


Third elective remedy: <u>Mandatory injunction compelling both selection, by default, of traditional flight paths and avoidance, by default, of flight paths over or near Plaintiffs' property</u>

A. For the Defendant FAA to cooperate with the Defendant airports so as to arrange for flights to follow traditional paths, or if such traditional paths are not readily traversable then to follow paths other than over or near Plaintiffs' property or the surrounding vicinity, other than in extraordinary circumstances;

B. For a declaratory judgment regarding the respective rights and duties of Plaintiffs and Defendants;

C. For issuance of a mandatory injunction ordering Defendant FAA to cooperate with Defendant airports so as to select, as a default path for each inbound or outbound flight, a path traditionally followed by flights bound inward toward or outward from the

runways of Defendant airports prior to March of 2015, or if such traditional paths are not readily traversable then so as to select, for each inbound or outbound flight, any path other than over or near Plaintiffs' property or the surrounding vicinity, except in extraordinary circumstances;

D. For Defendant airports to be thus compelled, by the mandatory injunction of the above line item C, to provide air traffic control guidance such that all inbound and outbound aircraft will follow the default path thus defined, and to otherwise follow paths that are not over or near the vicinity of Plaintiffs' property, other than in extraordinary circumstances;

E. For Defendant airports to publish, in a forum viewable by any member of the public, a reason for any flight to follow an inbound or outbound path over or near the vicinity of Plaintiffs' property;

F. For the Court to provide a statement in any format that may be deemed proper, to be provided to any federal, state or local agency, regarding the Court's findings regarding the lawfulness, properness, and judicial oversight of the flight paths defined according to the above line item C;

G. For damages relating to the diminution of value of Plaintiffs' property for the entire time during which Plaintiffs' home has been subject to the noise and hazards imposed by needless inbound and outbound flights over the property or its vicinity;

H. For reasonable costs of suit and associated fees;

I. For interest on the damages in a sum according to proof;

J. For such other and further relief as may be deemed just and proper.


Fourth elective remedy: <u>Compensation for damages</u>

A. For general damages in the amount of the difference between the fair market value of the Plaintiffs' property, given the relatively quiet and non-hazardous conditions prior to the flight path changes that have affected the property, and the fair market value of the

property given those flight path changes, or for any amount of related diminution of
value that may be deemed just and proper;

B.   For reasonable costs of suit and associated fees;

C.   For interest on the damages in a sum according to proof;

D.   For such other and further relief as may be deemed just and proper.

Respectfully submitted,

September _____4_____ 2015

Kirk J. Krauss, plaintiff *in propria persona*

September _____4_____ 2015

Anna P. Krauss, plaintiff *in propria persona*

**VERIFICATION**

I, KIRK J. KRAUSS verify that the foregoing statements are true of my own personal knowledge, except as to those matters alleged on information and belief, and it is my belief that statements made on information and belief are true.  This verification is made under the laws of the state of California in the County of Santa Cruz on September ___4___, 2015.

_Kirk J. Krauss_
KIRK J. KRAUSS

I, ANNA P. KRAUSS verify that the foregoing statements are true of my own personal knowledge, except as to those matters alleged on information and belief, and it is my belief that statements made on information and belief are true.  This verification is made under the laws of the state of California in the County of Santa Cruz on September ___4___, 2015.

_Anna P. Krauss_
ANNA P. KRAUSS



Exhibit A
Page 1 of 1

**FAA Meeting Minutes**

*July 24, 2015*
3PM to 5PM

Loma Prieta School District Offices Community Room
23800 Summit Road
Los Gatos, CA 95033

**MEETING ATTENDEES**
**FAA**
Glen Martin, FAA Western Regional Director, Los Angeles, CA
Steve May, Senior Advisor, FAA Western Regional Director, Los Angeles, CA
Elizabeth "Lynn" Ray, Vice President, Mission Support Services, Air Traffic Organization,
Washington DC
Ian McGregor, Public Affairs. Los Angeles, CA

**Community/Save Our Skies**
Patrick Meyer, Co-Chair
Dave Austin, Bob C., Rossana Bruni, Grant Weseman
Cheryl Poland, Barry Fitzgerald

**Elected  Representatives**
John Leopold, Santa Cruz County Supervisor
Dennis Norton, Mayor, City of Capitola
Dene Bustichi, Mayor, City of Scotts Valley

**Gov't Staff**
Alec Arago, Office of Rep. Farr
Kristen Petersen, Office of Rep. Farr
Karen Chapman, Office of Rep. Eshoo
Tony Sloss, Office of Supervisor Leopold
Gine Johnson, Office of Supervisor McPherson
Jamie Goldstein, City of Capitola City Manager
John Murray, Senator Diane Feinstein's Office

Supervisor Leopold chaired the meeting.  He stated that in his seven years of being a County
Supervisor, no other issue has engendered *so many visits to his office or pleas for help*.  He said
that people who are not normally engaged in politics are making themselves heard.

Exhibit B
Page 1 of 6

Gine Johnson, Supervisor Bruce McPherson's aide stated he had never seen more complaints than [with this issue]in 30 years in service.  He wants to work with everyone to find some solutions.

Mayor Dennis Norton noted Capitola has the highest density population under the new flight path.  In 16 years in office he has never heard a larger outcry.  He said the FAA must stop the use of airbrakes and raise the altitude of planes.

Scotts Valley Mayor Dene Bustichi spoke noting the jet noise is affecting property values in the City of Scotts Valley and his constituents are concerned about it. He stated that Scotts Valley has the highest property values in the County.

Glen Martin, Regional Administrator for the Western-Pacific Region spoke.  He stated he wants to have a constructive meeting.  They hear us.  Knows we are working hard to find solutions.  Noted public meetings are different than a smaller group and therefore he asked to limit the number of participants.

John Leopold noted our demonstration at Anna Jean Cummings Park, happening concurrently, as a place to express rage.  When impacts of the flight path changes were felt, local citizens started working together, thus, Save Our Skies Santa Cruz.

Patrick Meyer introduced the SOSSC presentation and focused on the impact of the flight path on Santa Cruz.  Showed video of Pulley family first, then followed it with a brief power point presentation regarding the demographics of Santa Cruz County, our local environment, and statistics reflecting the number of complaints and change in number of planes.  He cited examples of how the jet noise has devastated people's dreams.  The presentation was followed by a video collage of local residents talking about the impacts of the jet noise on their lives.

Dave Austin showed a power point presentation that made various recommendations for SERFR aircraft speed and altitude constraints with the goal of higher altitudes while transiting the Santa Cruz County and Summit areas and minimizing speed brake usage.  His presentation showed ways in which the BIG SURTWO route and altitude constraints were quieter by design for Santa Cruz County than the new SERFR route. A possible SERFR design issue was discovered allowing aircraft to descend below the SFO arrival Class B protected airspace and into potential conflict with general aviation aircraft. The result is a much lower Summit altitude crossing than previously allowed. On this topic an Air Carrier pilot submitted a report to the NASA Aviation Safety Reporting System that documented his experience. The pilot's report was submitted as part of the presentation. Glen Martin and Lyn Ray discussed the suggestions from their Administrators' positions.

Bob presented a power point of several facts and charts created from detailed Northern California TRACON data comparing roughly 7,500 SERFRONE aircraft flight tracks from 2015 to 50,000 BIGSURTWO aircraft flight tracks from 2014 that show the aircraft's altitudes, speeds and positions when crossing various waypoints. With hard data Bob validated many points in Dave's presentation while raising additional noise related facts:

- **FAA does not understand the impact of noise on communities in rural environments (annoyance).**

  Both the EPA and the FAA urge caution when assessing noise impacts in rural communities. FAA used none in making decisions that shifted noise from one community to another.

- **FAA did not follow its own internal guidance and policy in the design of SERFR1 and misled the public in the EA.**

  When the EA was released to the public for comment, the SERFRONE design was not complete and the public was not informed of SERFRONE design. The study report recommendation specifically identified ANJEE fix as the point to route traffic through Santa Cruz to Menlo. Study Teams used as a guiding principle in their recommendations to: **"overlay the historical radar tracks with PBN routes or procedures to minimize the risk of significant noise impact."** Further, the Memorandum of Understanding (MOU) between FAA and the NATCA, states that **"recommendations contained in the (study) report will be adopted, in their entirety, or returned to the Study Team."** The public believes that the MOU forms part of the EA process. All final designs were certified as complying with the terms of the MOU. The final design of SERFRONE did not route thru ANJEE fix and resulted in the shift of aircraft noise from one community to another. This shift is the root cause the current noise issue in Santa Cruz County and there is no justification provided for it.

- **FAA Design of SERFR is Seriously Flawed**

  Numerous excursions from Class B airspace were documented from NorCal flight data.  These excursions create the potential for a mid-air collision even when "flying the procedure as designed" as stated in the NASA ASRS safety report. This data validates that the issue is not a one-off occurrence, but a fundamental flaw in the design.

- **Flights on SERFRONE are lower and faster than on BIGSURTWO.**

  Analysis of NorCal data show that fights are significantly lower and faster on SERFRONE. This disparity and resulting impact is the highest as one approaches the summit.  These changes result in at least a 200-400% increase in flights likely to be disturbing/annoying. This also results in excessive use of air brakes and higher fuel consumption. There are likely many aircraft that are exceeding standard 250KIAS/10,000 feet constraint to mitigate bird strike damage.  This is a failure of the Optimized Profile Descent (OPD) design as promised in the EA to be both higher and quieter and more fuel-efficient.

- **FAA has not Guarded Public Trust in Noise Impacted Communities**

  By indiscriminately shifting noise impacts without strong justification or preparation of an EIS, the FAA improperly ignores/trivializes noise impacts except within about 6 miles of an airport. This is done even when the "changes are likely to create a division in the community" or to "be inconsistent with goals adopted by the community" as defined in FAA Order 1050.1E.

**Exhibit  B**
**Page  3  of  6**

- **FAA has created a legal obligation or potential liability for property owners**
  California law requires the disclosure of "neighborhood noise problems" when selling real estate. Numerous public meetings, noise complaints, and the meeting with the FAA clearly demonstrate that the FAA has created a "neighborhood noise problem". This likely qualifies as a "nuisance."

John Leopold thanked SOSSC for the presentation, noting the group's hard work. Stated that elected officials really care about the issue. Supervisor Leopold referred to the letter dated July 24, 2015 written by himself, Supervisor McPherson, Mayor Dennis Norton and Mayor Dene Bustichi regarding their asks of the FAA:

1. Immediately return SERFR ONE route to BIG SUR TWO, reinstating the constraints that worked for over 40 years.

2. If it is not possible to return to BIG SUR TWO, implement the constraints that BIG SUR TWO used on SERFR ONE. Consider raising the altitudes of the flight paths, reducing air braking and/or fanning the paths over a wider range. Also address and enforce the Class B airspace regulations.
3. Work to mitigate noise impingements from BRIXX, SSTIK and CNDLE.

4. Commit to engaging in a continuing dialogue and hold a public meeting within the next 60 days.

Supervisor Leopold noted that these requests are MODEST. He stated that the FAA should note that it was the outcry of the people of Santa Cruz County that spread across the state and prevented additional offshore oil drilling along the California coast: we are a powerful group. Glen Martin stated that he appreciates the history and heritage of Santa Cruz. He is not going to set us aside. The FAA will work with us. He accepts our request for a public meeting. He will commit to a date within the next month. He is meeting with Congresswoman Speier in August and would like to coordinate his efforts with the three congressional districts: Farr, Eshoo, and Speier before scheduling the public meeting. He asked that we "reframe" our ask. The FAA wants to move <u>forward</u> with us to help solve/mitigate the problems we are having, but "moving the route back" as it was before is reversing the Norcal Metroplex action that is closed and will not be considered. He is not ruling out, however, the possibility of alternating the routes or other measures to spread out the impact.

Lynn Ray said that the FAA has technology that would allow arriving flights to be dispersed over a larger area (fan out) to reduce the concentration that results from RNAV procedures. Bob responded that based on NorCal data, flight track concentrations were similar between BIGSURTWO and SERFRONE. Lynn continued to clarify that No Significant Impact is a legal term for the FAA. The Metroplex report that found no significant impact for the new route is accurate. It is based on the existing science of noise measurement. She understands that the talk of significance means something different to community members; nonetheless, the FAA is using it accurately. She also stated that she knows that DNL as a measurement of noise impacts is a problem, different measurements are being studied, however, it is what the science is today.

Lynn stated that they will not go back and reopen the Norcal Environmental Assessment.  That is done and it's history.  Changing noise measurements is not a short-term proposition.

Supervisor Leopold stated that he has constituents that recorded single noise events at 70 dbl at 6:40 am and that this level of noise violates county noise ordnances and would result in a monetary fine.  Sound is very real.  Other constituents can identify aircraft by reading markings as they fly by, or by the loudness of the rumble that wake people from sleep in the middle of the night (e.g. Air Cargo flights)

Alec Arago  said our bosses (Farr and Eshoo) want and EIS.  Lynn Ray said that the FAA spends millions of dollars on environmental studies every year.  The No Impact finding in our Metroplex was factually correct.  She went on to state that the Study Team recommendations are never final.  She stated that they do not design for sound; they design for safety and efficiency and is unaware of the reasons why the track was moved. To understand would require some checking and potential analysis that she would look into. She stated the study team's study was more like a business assessment.  She stated the research and data were generated elsewhere--not by the study team.  Lynn said that study team recommendations were largely irrelevant to the redesign process.  "All the hard work is done by the design team."  (It is unclear how many different contractors and/or FAA employees participated in the study team/design team process and whether communication between these various parties occurred)

Dene Bustichi asked: can we raise altitude of planes. Lynn Ray said that they would need go back and look at that.  Re-charting procedures takes 6 months to a year. Glen Martin said that this request will require some sort of environmental action and review.  John Leopold asked if this question could be "bird-dogged" and a fix arrived at faster.  Glen Martin spoke and said that what Lynn Ray is offering is an expedited process; usually, such a request would take up to three years to examine.  John Leopold asked about the use of speed breaks.  Lynn Ray said she thought that they fixed it on June 8.  She will go back and immediately look at why this fix has not held. She also stated that she would look into the violations of the Class B airspace right away.  As soon as she gets in the car will put word out.

Tony Sloss asked about the EPICK waypoint.  Can the altitude be changed as Dave Austin suggested.  Glen Martin said this would require an environmental review. The suggestion was also made to the FAA that the EPICK waypoint be moved three miles further west.

Tony Sloss asked about the SFO departures over the summit.  Lynn Ray asked if this is actually a change.  Dave Austin confirmed that yes, now there are five new routes including CNDLE, WESLA, STIXX and BRIXX.

Discussion regarding the Class B airspace.  Lynn Ray said that it an important safety issue but does not imply a design flaw of the flight design (SURFR) but possibly a Class B design issue instead.  She also related that there is a new (already started or soon to be) effort underway to look at Class B airspace changes.   She will investigate. (It should be noted that class B airspace changes made to accommodate the current SERFRONE design would most likely result in VFR aircraft flying closer to the ground and making more noise. This is problematic to us because is increases VFR noise impacts as well as continuing to allow SERFRONE to be loud. It should be

noted that the FAA is required to assess 'cumulative effects' of its actions and this was not mentioned at all in the EA.)

Jamie Goldstein asked if EPICK waypoint could be moved three miles further offshore?  Glen Martin said they could look at this.

Glen Martin said as he leaves here he will be coordinating with congressional members.  He encouraged us to keep talking to our congressional leaders and use them as the conduit for communication.  Glen Martin stated he is willing to accept data but not from 1700 residents.  They will do a coordinated response back through congressional offices.

John Leopold stated that he sent a letter to Steve May (Special Programs Integrator ) at FAA and received no formal response.  Would like to get responses.  Glen Martin stated that they have been bombarded so a respond may not have happened, apologized, has been working on it; but we asked some very technical questions. Hope that this meeting would be best next step. John Leopold stated that this is cold comfort to a woman in his office with her child crying about the jet noise.

Grant Weseman question:  departures from Oak and SFO going over land; why can't all the departures go out to sea; if one of the routes does, why not all five?  Glen Martin said to maintain perspective.  We have a massive and complex transportation infrastructure and there are going to be impacts and acknowledged that they could not predict all of the impacts or design an efficient transportation system with lots of restrictions on departures and cannot put all planes over water.  The FAA will take into account public input and at the same time the public needs to accept some of the efficiencies that the FAA needs to put into action.

"Mayor Dennis Norton said we are **not going to stop until the jet noise stops."**

Patrick Meyer asked what do I go back and say to the Pulley family (in the video).  Glen Martin said to tell her it's not personal; the people under the flight path have not been singled out.  Lynn Ray said she would institute an education bulletin for some of the international carriers regarding use of speed brakes and "fly friendly" by staying higher in the window.

Glen Martin asked that there be one point of contact with SOSSC.  He stated that we are a "unique and remarkable organization."  He thanked Karen Chapman and Alec Arago for the work they did to get the meeting organized.

Meeting adjourned at 5:35.

## NextGen Metroplex – Northern California

The FAA is redesigning airspace and addressing inefficiencies, introducing new Performance Based Navigation (PBN) procedures, and making use of Time Based Flow Management (TBFM) to make the Northern California Metroplex airspace more efficient and improve access to its airports. The effort focuses on a number of airports, including Hayward Executive (HWD), Oakland International (OAK), Palo Alto Airport of Santa Clara County (PAO), San Francisco International (SFO), Norman Y. Mineta San Jose International (SJC), and Sacramento International (SMF). The information below may also include data from nearby airports outside of the Northern California Metroplex (please see the Reference Guide for additional information).

All results are reported by Fiscal Year (FY), October 1 — September 30.

## Projected Annual Benefits
Source: FAA — Northern California Metroplex Study Team

## $3.7 Million

Value of Fuel Savings

## 1.3 Million Gallons

Fuel Savings

## 11.0 Thousand Metric Tons

Carbon Savings

These are annual benefits expected to accrue upon completion of the NextGen near-term procedural improvements implemented by the FAA's Metroplex program. They are based on the FAA's preliminary assessment of proposed airspace improvements compared to operations in a year before any improvements were made. The value of the projected fuel savings is based on a $2.85 per gallon rate. The data estimates are current as of July 2015.

## Northern California Average Daily Metroplex Traffic (FY09–FY14)
Source: Operational Network (OPSNET)

**Average Daily Metroplex Traffic (FY09–FY14)**

| FY | Commercial Air Carrier | General Aviation | Military | Total Operations |
|------|------------------------|------------------|----------|------------------|
| 2009 | 2,042 | 1,208 | 27 | 3,277 |
| 2010 | 1,995 | 1,050 | 28 | 3,073 |
| 2011 | 1,987 | 1,056 | 33 | 3,075 |
| 2012 | 2,044 | 1,078 | 38 | 3,160 |
| 2013 | 2,011 | 1,058 | 30 | 3,100 |
| 2014 | 2,062 | 1,128 | 30 | 3,220 |

Exhibit C
Page 1 of 2

## Average Daily Scheduled Flights (FY09–FY14)

Source: Bureau of Transportation Statistics (BTS)/Air Carrier Statistics Database

**Average Daily Scheduled Flights (FY09–FY14)**

| FY | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|
| Scheduled Flights | 1,804 | 1,746 | 1,751 | 1,813 | 1,646 | 1,824 |

## Northern California Metroplex Airports

**HWD**
  Hayward Executive Airport

**OAK**
  Oakland International Airport

**PAO**
  Palo Alto Airport of Santa Clara County Airport

**SFO**
  San Francisco International Airport

**SJC**
  Norman Y. Mineta San Jose International Airport

**SMF**
  Sacramento International Airport

**Exhibit C**
**Page 2 of 2**